UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RANDY ROBY,

    Petitioner,

v.                                 Civil Action No. 14-12832-IT

DOUGLAS DEMOURA,[1]

    Respondent.

MEMORANDUM & ORDER

August 4, 2017

TALWANI, D.J.

Before the court is Petitioner Randy Roby's Petition for a Writ of Habeas Corpus [#1], as amended.

I.    Procedural and Factual Background

In December 2008, Petitioner was tried in Massachusetts Superior Court for Essex County on five indictments under Mass. Gen. Laws ch. 265, § 22A, *i.e.* Rape of a Child.[2] Commonwealth v. Roby, 969 N.E.2d 142, 146 (2012) ("Roby I")[3]; (S.A. 1-19). Three of the

---

[1] Petitioner moves to substitute Douglas DeMoura for the Commonwealth of Massachusetts as Respondent in this action. Pet'r.'s Mot. for Leave to Amend Caption [#88]. There has been no opposition. The motion is ALLOWED, and the caption now reflects this substitution.

[2] This was Petitioner's second trial on these charges. Supplemental Answer ("S.A.") 9. Petitioner states no objection to the process by which he was tried a second time: the habeas proceedings before this court consist entirely of attacks on the convictions stemming from the second trial, based on alleged errors in that second trial.

[3] Petitioner has not contested the Supreme Judicial Court's recitation of the posture of this case; this court refers to that decision where helpful to supplement citations to the Supplemental Answer.

indictments charged the offense in connection with a child victim pseudonymously named Nancy, and the other two involved Nancy's half-sister Toria (also pseudonymous). Roby I, at 146. At the close of the Commonwealth's case-in-chief, Petitioner moved for a required finding of not guilty pursuant to Mass. R. Crim. P. 25(a), which permits trial judges to enter findings of not guilty of offenses charged in an indictment "or any part thereof . . . if the evidence is insufficient as a matter of law to sustain a conviction . . . ." Id.

The trial judge allowed the Rule 25 motion in part. As to Nancy, he determined the Commonwealth proffered insufficient evidence on the element of penetration, and thus reduced those charges to indecent assault and battery on a person under the age of 14, Mass. Gen. Laws ch. 265, § 13B. (S.A. 463-477) (transcript of hearing on Rule 25 motion). As to Toria, he determined the Commonwealth failed on the element of force, and thus reduced those charges to statutory rape, Mass. Gen. Laws. ch. 265, § 23. Id.

Before submitting the charges to the jury, the trial judge amended the indictments as to Toria—which previously listed "Peabody" as the location of the offenses—by adding the specific locations reflected in Toria's testimony, namely the victim's "living room" and her grandmother's "bedroom" (both of which locations are in Peabody). Roby I, at 147-48. Petitioner renewed his Rule 25 motion after the jury was charged with the amended indictments, arguing that the grand jury did not indict him for an offense in the grandmother's bedroom. Id. The court denied the motion, and the jury returned guilty verdicts on each reduced count, including the amended indictments as to Toria. Id.

The Supreme Judicial Court reviewed Petitioner's appeal directly. As relevant here, Petitioner argued to the Supreme Judicial Court that (i) "he was convicted of crimes for which he was not indicted" in connection with the trial judge's amendments to the indictments; and (as

2

explained in further detail *infra*) that the trial judge committed reversible error in connection with evidentiary rulings and a refusal to grant a new trial involving (ii) Toria's cross-examination and (iii) the admission of prejudicial bad act evidence. (S.A. 24-81). On June 4, 2012, the Supreme Judicial Court affirmed the convictions in full. Roby I, at 155.

On April 8, 2013, Petitioner collaterally attacked his conviction pursuant to Mass. R. Crim. P. 30(a), advancing what in substance amounts to a single argument distinct from those on direct appeal: that the trial judge offended double jeopardy by submitting reduced charges to the jury. (S.A. 337-366). Petitioner also posited that he was afforded constitutionally ineffective counsel at both the trial and appellate level by way of both counsels' refusal to assert this argument. (S.A. 367-369).[4] That same day, the Superior Court denied the motion. (S.A. 18). Petitioner appealed that denial to the Massachusetts Appellate Court. (S.A. 18).

On June 30, 2014, while that appeal was pending in the state court, Petitioner filed the instant petition, asserting the same three grounds for relief advanced on direct appeal.[5] Pet. For a Writ of Habeas Corpus [#1]. On March 26, 2015, Petitioner filed a motion for this court's review of the 30(a) motion pending before the Massachusetts Appellate Court. Mot. for Review [#30]. This court construed the motion as seeking to amend the habeas petition with the double jeopardy and ineffective assistance claims raised in the 30(a) motion, Order [#37], and subsequently stayed proceedings until exhaustion of the 30(a) claims before the Massachusetts courts. Electronic Order [#44].

---

[4] In his reply brief in connection with his 30(a) motion, Petitioner substantially continues to argue in support of his double jeopardy claim and the contingent ineffective assistance claims. (S.A. 489-514).

[5] The petition was timely by operation of the 30(a) motion and 28 U.S.C. § 2244(d)(2), which tolls time while a proper state court application for collateral relief is pending.

3

The denial of the 30(a) motion was affirmed by the Massachusetts Appellate Court on July 14, 2015, and denied further appellate review by the Supreme Judicial Court on December 22, 2015. (S.A. 568; 569); Commonwealth v. Roby, 2015 WL 4249188, *1 (Mass. App. Ct. July 14, 2015) ("Roby II").

Over the Commonwealth's objection, this court ultimately allowed Roby to amend his petition to include the 30(a) claims, and directed Petitioner to file a memorandum in support of the amended petition. Order [#72]. Petitioner did so, but briefed only his double jeopardy and ineffective assistance claims, *i.e.* the 30(a) claims later added to the petition, and not the claims raised on direct appeal and in the initial petition (the amendment to indictments as to location, and the evidentiary/new trial rulings). Pet'r.'s Mem. of Law [#77].

II. Standard of Review

The court's review of the habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, if a state court has adjudicated a claim on the merits, the federal habeas court must defer to that adjudication unless it (1) "resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A federal court must review *de novo* any federal claim not reviewed by the state court on the merits. See Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010).

A state court decision is "contrary to" clearly established Federal law if the court applies "a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts."

4

Bell v. Cone, 535 U.S. 685, 694 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)); Sleeper v. Spencer, 510 F.3d 32, 37-38 (1st Cir. 2007). A state court decision involves an "unreasonable application" of clearly established Federal law "when the state court correctly identifies the correct legal principle, 'but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend clearly established legal principles to a new context where they should apply.'" Malone v. Clarke, 536 F.3d 54, 63 (1st Cir. 2008) (quoting Sleeper, 510 F.3d at 38). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Under both the "contrary to" and "unreasonable application" prongs, "clearly established Federal law" refers only to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412). If Supreme Court cases "give no clear answer to the question presented," a state court's resolution of a constitutional question may not serve as a basis for habeas relief. Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam); see also Carey, 549 U.S. at 77 (a lack of holdings from the Supreme Court regarding a topic bars a finding that a state court "unreasonably appli[ed] clearly established Federal Law.").

If a state court applied a standard that was contrary to, or an unreasonable application of, clearly established federal law, the federal court must conduct a *de novo* review of the claim. See Aspen v. Bissonnette, 480 F.3d 571, 576 (1st Cir. 2007). Under that review, the petitioner must demonstrate that he "is in custody in violation of the Constitution or laws or treaties of the

5

United States." Id. at 576 (quoting 28 U.S.C. § 2254). In other words, "a petitioner must show that his underlying detention is unlawful and not just that the state court employed faulty reasoning in his case." Id. (citing Bronshtein v. Horn, 404 F.3d 700, 724 (3d Cir. 2005)).

III. Discussion

    *a. Double Jeopardy*

Petitioner asserts that it was constitutional error to submit reduced charges to the jury. He argues that the trial judge's partial allowance of his motion for a required finding of not guilty amounted to an acquittal and thus immediately afforded Petitioner rights to liberty and double jeopardy protections. But this argument elides a crucial distinction between being entirely acquitted of a charge and having a charge merely reduced to a lesser included component. Here, the trial judge found the evidence insufficient to support the charged offenses—rape of a child under the age of sixteen by force, see Mass. Gen. Laws ch. 265, § 22A—but still sufficient to support indecent assault and battery on a person under the age of 14 (Mass. Gen. Laws ch. 265, § 13B) as to Nancy (for whom § 22A's "penetration" element was not met), and statutory rape (Mass. Gen. Laws ch. 265, § 23) as to Toria (for whom § 22A's "force" element was not met). (S.A. 463-477). Each of these latter offenses is included within Mass. Gen. Laws ch. 265, § 22A,[6] and there is no authority or reasoned basis for the proposition that federal law forbids— as it must, if habeas relief is to attach—convictions for offenses necessarily included in the

---

[6] Mass. Gen. Laws ch. 265, § 22A forbids "sexual intercourse or unnatural sexual intercourse with a child under 16," accomplished by means of overcoming the child's will by force or threat of bodily injury. As the Supreme Judicial Court noted, one cannot violate this statute in connection with children of Toria's and Nancy's age without also violating Mass. Gen. Laws ch. 265, § 13B (indecent assault and battery on child under the age of 14) and Mass. Gen. Laws ch. 265, § 23 (unlawful sexual intercourse with child under the age of 16). See Roby I, at 399-400 (noting § 13B and § 23 are included within § 22A).

6

offenses charged. See United States v. Nur, 799 F.3d 155, 158-159 (1st Cir. 2015) (explaining history and propriety of lesser-included-offense doctrine and Fed. R. Crim. P. 31(c)).[7]

Petitioner's sole authority, Smith v. Massachusetts, 543 U.S. 462, 466-68 (2005), is not inconsistent with this conclusion. There, the Supreme Court held in the double jeopardy context that a required finding of not guilty on a particular count is tantamount to an acquittal on that count, thus forbidding later prosecution (even within the same trial) on that count. Id. Had the trial judge in Petitioner's case reinstated Mass. Gen. Laws ch. 265, § 22A in full after having granted the Rule 25(a) motion, Smith would have barred the later prosecution. 543 U.S. at 466-68. But the trial judge here did not reinstate dismissed charges as in Smith; he instead allowed (to Petitioner's benefit) only those portions of the charges sustainable by admissible evidence. 543 U.S. at 466-68; (S.A. 463-477). Petitioner was therefore not convicted of acquitted charges, and the Massachusetts Appellate Court did not contravene clearly established federal law in rejecting Petitioner's challenge. Roby II, at *1.

b. *Ineffective Assistance of Counsel*

Petitioner's claims of ineffective assistance of trial and appellate counsel stem solely from those counsels' refusals to assert Petitioner's double jeopardy claim. Pet'r.'s Mem. of Law [#77] 11-15; see (S.A. 367-369) (Petitioner's state court brief in support of 30(a) motion). As explained *supra*, Petitioner has no non-frivolous double jeopardy claim; as such, neither counsel was ineffective for refusing to raise one. Lattimore v. Dubois, 311 F.3d 46, 57-58 (1st Cir. 2002)

---

[7] Petitioner asserts it is error to rely on caselaw interpreting Fed. R. Crim. P. 31(c), the federal rule governing lesser-included offenses, because that rule does not and did not operate in state proceedings. Pet'r.'s Resp. to Resp't.'s Opp'n to Pet'r.'s Pet. For a Writ of Habeas Corpus [#89]. But on habeas review this court is concerned with decisions contrary to *federal* law; in determining whether it was federal error to charge Petitioner's jury with lesser-included offenses, it is probative that the Federal Rules of Criminal Procedure explicitly allow this exact process.

7

(Strickland v. Washington, 466 U.S. 668 (2002), does not require appellate presentation of every non-frivolous claim—let alone frivolous claims); Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999) ("Obviously, [trial] counsel's performance was not deficient if he declined to pursue a futile tactic."). These claims therefore fail.

    *c. Amendments to the Indictments*

The Essex County indictments that charged Petitioner described offenses taking place in "Peabody, but otherwise did not specify where in Peabody." Roby I, at 147. The trial judge modified the indictments as to Toria and "instructed the jury that a guilty verdict on each indictment required they unanimously find at least one occasion of the offense . . . in the dining room and one occasion in [the grandmother's] bedroom." Id. Petitioner argued to the Supreme Judicial Court that these amendments violated the grand jury rights found in both Article 12 of the Massachusetts Constitution and the Fifth Amendment the United State Constitution. Id. at 147-49; (S.A. 26-36). The petition before this court appears to again assert this argument by largely mirroring the state court brief's language and claiming "the defendant was convicted of crimes for which he was not indicted in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution." Pet. For a Writ of Habeas Corpus [#1] 5.

Petitioner has failed to brief this argument to this court beyond its mere identification in the petition, constituting waiver. Powell v. Tompkins, 783 F.3d 332, 349 (1st Cir. 2015) (failure to cite to any applicable Supreme Court authority or "grapple with the SJC's analysis at all" fatal in § 2254 context). Regardless, the claim fails. First, as noted by the Supreme Judicial Court, the Fifth Amendment's grand jury right is not incorporated against the states, Roby I, at 147 n.6, which both negates the presence of a Fifth Amendment grand jury error capable of habeas review and illuminates that the Supreme Judicial Court's decision (which explicitly assessed the

8

amendments' propriety under Massachusetts law) operates as a habeas-proof "independent and adequate state law ground." See Lee v. Corsini, 777 F.3d 46, 54 (1st Cir. 2015).

Second, even were this court to construe the petition as asserting additional attacks on the amendments under the Sixth and Fourteenth Amendments, the result remains unchanged. Petitioner is guaranteed only that he be given "adequate notice of the charges against him." See Lopez v. Smith, 135 S.Ct. 1, 4 (2014). Here, not only did the allegedly-infirm amendments merely charge where, *within the location already provided in the original indictments*, the offenses took place, but Petitioner in fact had the benefit of an entire first trial in which the Commonwealth presented its evidence against him, thus providing not just adequate but ample notice of what allegations he faced in the operative trial. Roby I, at 148. This claim accordingly fails.

  d. *Toria's Testimony and Other Evidentiary Rulings*

The context for Petitioner's argument regarding Toria's testimony is set forth by the Supreme Judicial Court as follows:

> In December, 2007 [after Petitioner's first trial], Toria was charged in Middlesex County with murder. Before the opening statements at the defendant's second trial in December, 2008, the Commonwealth moved to preclude the defendant from impeaching Toria with the murder indictment. Defense counsel argued, however, that Toria might be biased in testifying at the second trial because, on information and belief, her defense to the murder indictment was based on posttraumatic stress disorder resulting from having been sexually assaulted by the defendant. The judge stated that, in accordance with Commonwealth v. Haywood, 377 Mass. 755, 762–763, 388 N.E.2d 648 (1979), he would not allow the impeachment absent a material change in Toria's forthcoming trial testimony.
>
> Surprising both the prosecutor and the defendant at the second trial, Toria testified that in the backyard shed the defendant had sucked on her nipples and had painted a yellow flower onto one of her nipples. On cross-examination, defense counsel tried to impeach her, questioning why she was revealing this incident for the first time on the stand. Toria, however, claimed that "years ago" she had told a victim witness advocate about it.

9

Before the testimony of the next witness, defense counsel moved to recall Toria so that he could impeach her with the murder indictment, arguing that Toria's testimony concerning the painting of her nipple was a material deviation from her previous testimony. The prosecutor objected, asserting that the testimony did not pertain to a charged offense and noted that Toria never wavered from her assertions of digital penetration. The prosecutor stated that she had no knowledge of this allegation and would not refer to it during her closing argument. The judge acknowledged that the new testimony, if believed, might add credence to Toria's other claims due to what the jurors may perceive as a kind of "kinkiness," but expressed his view that any potential impact was limited by the collateral nature of the testimony and the prosecutor's representation that she would not reference this evidence during her closing argument. The judge concluded that the probative value of the evidence was minimal and that the prejudicial impact of the murder charge would be "very substantial," and excluded the evidence over the objection of defense counsel.

The next day before any testimony was taken, defense counsel moved for a mistrial, arguing that Toria's testimony concerning the painting of her nipple amounted to a prior bad act of the defendant of which he was not given notice. He suggested that the evidence was very damaging, likely having a "cumulative effect down the line," and expressed doubts that any curative instruction could mitigate the prejudice. The judge determined that granting a mistrial would be harsh and instead struck the testimony, [and provided cautionary instructions to the jury].

[…]

The defendant argues that the judge abused his discretion by failing to allow defense counsel to impeach Toria with the murder indictment and by failing to declare a mistrial."

Roby I, at 152-154. The Supreme Judicial Court rejected these contentions, concluding that the trial judge did not abuse his discretion under Massachusetts caselaw in restricting Toria's impeachment and refusing to grant a mistrial.

The context for Petitioner's final argument is as follows:

The defendant argues that the judge abused his discretion in admitting "numerous incidences of non-charged criminal behavior and prior bad act[ ]" evidence amounting to prejudicial propensity evidence that created a substantial risk of a miscarriage of justice. He points to the evidence of images of naked or semi-naked women on his computer, an issue we have already addressed and determined to be properly admitted to show context of the first complaint testimony. He also points to the incident in which Toria testified that the defendant painted a flower on one of her nipples, which we have also addressed. Concerning the defendant's remaining claims, including the admission of evidence regarding the number of times the defendant sexually touched each of the girls, such evidence was admissible to show "common scheme, pattern of operation, [and] absence of accident," here,

10

> undermining the defendant's explanation for the presence of Toria on his lap without a shirt on when Linda walked into the basement. See Commonwealth v. Dwyer, 448 Mass. 122, 128, 859 N.E.2d 400 (2006), quoting Commonwealth v. Marshall, 434 Mass. 358, 366, 749 N.E.2d 147 (2001). The evidence was properly admitted.

Roby I, at 152-154

Petitioner has incorporated these arguments in his petition without further argument or briefing. Pet. for a Writ of Habeas Corpus [#1]. Again, this alone constitutes waiver, see Powell, 783 F.3d at 349, as does the fact that Petitioner's brief to the Supreme Judicial Court does not flesh out an argument based in a federal constitutional right. (S.A. 66-81); Coningford v. Rhode Island, 640 F.3d 478, 483 (1st Cir. 2011) (proper to dismiss as unexhausted federal claim not presented "to the state court face-up and squarely.") (internal citation omitted). But again, regardless, the claims have no merit in this habeas proceeding.

As to the evidentiary rulings—the exclusion of Toria's murder indictment and the inclusion of Petitioner's prior "bad acts"—Petitioner has failed to show, as he must, that the trial judge or Supreme Judicial Court decisions were "so arbitrary or capricious as to work a denial of the petitioner's constitutionally secured fair-trial right." Coningford, 640 F.3d at 485 (elucidating standard for habeas review of state evidentiary rulings). Alternatively, to the extent Petitioner is asserting a violation of his Sixth Amendment confrontation right based on limitations placed on Toria's cross-examination, he has not demonstrated how the trial judge abused his "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); see Soto v. Ryan, 2014 WL 1056957,

*12-14 (D. Mass. March 14, 2014) (applying Van Arsdall to limitations placed on scope of cross examination and surveying relevant caselaw).[8] In the final analysis, Petitioner needs to demonstrate that the limitation of Toria's cross-examination was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." He has not done so.

IV. Conclusion

In accordance with the foregoing, the Petition [#1] is DENIED.

IT IS SO ORDERED.

August 4, 2017                                             /s/ Indira Talwani
                                                           United States District Judge

---

[8] It bears noting that the exclusion of extrinsic evidence in cross-examination—like a murder indictment—is of a lesser potential threat to constitutional rights than restrictions of cross-examination itself. See United States v. Catalan-Roman, 585 F.3d 453, 464 (1st Cir. 2009).